UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:21-CR-00119 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| JAMES PATTERSON, | : | |
| Defendant. | : | (Electronically Filed) |

GOVERNMENT'S SENTENCING MEMORANDUM

AND NOW, the United States of America, by Stephen W. Dukes, Assistant United States Attorney for the Middle District of Pennsylvania, hereby files this Sentencing Memorandum as an aid to the Court in the sentencing of the defendant, James Patterson (hereinafter "Patterson"), currently scheduled for April 11, 2024.

I. BACKGROUND

Patterson was indicted on April 21, 2021, and charged with Conspiracy to Distribute and Possess with Intent to Distribute 40 Grams and More of Fentanyl, in violation of 21 U.S.C. § 846, Distribution of Fentanyl, in violation of 21 U.S.C. § 841, Possession with intent to Distribute Fentanyl and Cocaine, in violation of 21 U.S.C. § 841(a)(1), Possession of Firearm in Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), and Possession of Firearm by a

Prohibited Person, in violation of 18 U.S.C. § 922(g).[1]  Doc. 1.  On August 23, 2023, Patterson pleaded guilty to Count 2 pursuant to a written plea agreement whereby the United States agreed to dismiss the remaining counts of the Indictment after sentencing, recommend a reduction for acceptance of responsibility if warranted, and make a sentencing recommendation it considers appropriate up to and including the maximum sentence of imprisonment and fine allowable, together with the cost of prosecution. Docs. 114 and 74.

The final Presentence Report (hereinafter "PSR") with an Addendum was filed on December 7, 2023.  Docs. 137 and 138.  The PSR calculated the applicable guideline imprisonment range at 151-188 months' imprisonment with at least three years of supervised release, based on Patterson's status as a career offender.  PSR ¶¶ 66, 69. Without career offender designation, Patterson's guideline range is 33 to 41 months based on a total offense level of 13 and a criminal history category of VI. Doc. 138 p. 2.

---

[1] Patterson was indicted along with Aaron M. Dudley (Dudley), and Onslow Wright (Wright). Dudley pleaded guilty and is pending sentencing with this Honorable Court. Doc. 118. Wright is currently a fugitive.

The facts of this case are accurately stated in the PSR. PSR ¶¶ 4-8. In sum, law enforcement observed Patterson enter a house, a woman enter that same house shortly after Patterson, and the woman leave the house with what was ultimately discovered to be a fentanyl and cocaine mixture that she purchased from Patterson. PSR ¶¶ 4-5. Patterson and Aaron Dudley left the house, got into a car, drove away from the police, crashed the car, and fled on foot. PSR ¶ 5. Law enforcement recovered two loaded firearms from the car's floorboard where Patterson was seated. PSR ¶ 6. Additionally, 25 small glassine bags of a fentanyl and cocaine mixture as well as 47 small glassine bags containing a total of .94 grams of fentanyl were also recovered from the car. *Id.*. An additional gram of fentanyl, 3.3 grams of cocaine, and a 0.03 gram mixture of cocaine hydrochloride and fentanyl were recovered from the house described above. PSR ¶ 7.

## II. ARGUMENT

Proper sentencing procedure follows a three-step process. First, the district court must make a determination of the sentencing guideline range. *Gall v. United States*, 552 U.S. 38, 50 (2007); *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013); *United States v. Boney*, 769

F.3d 153, 159 (3d Cir. 2014). Second, the court must resolve any requested departures from the sentencing guidelines. *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Finally, the sentencing judge is required to fashion a sentence after making an individualized assessment of the defendant and considering all 18 U.S.C. § 3553(a) factors. *Gall*, 552 U.S. at 50; *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).

### A.   Step One – Sentencing Guidelines

The PSR calculated the applicable guideline range at 151-188 months based upon a total offense level of 29 and a criminal history category of VI.  PSR ¶ 66. This guideline calculation is based on Patterson's qualification as a career offender under USSG § 4B1.1(a). Patterson has two predicate offenses that may qualify him for Career Offender status. PSR ¶ 20; Doc. 138. Defense objects to qualification of both offenses for separate reasons. Doc. 138 p. 3. The two predicate offenses at issue are: 1) 2007 Pennsylvania robbery conviction under 18 Pa. C.S. § 3701(a)(1)(iv); and 2) 2012 Pennsylvania possession with intent to deliver cocaine conviction. PSR ¶¶ 28-29.

The Government does not contest defense's objection to the Patterson's 2007 robbery conviction given the facts and circumstances specific to this case. The Government notes, however, that in an appropriate case (with the requisite supporting *Shepard* documents), a conviction under Pennsylvania Criminal Statute Sections 3701(a)(1)(iv) may qualify as a predicate offense.

Defense also objects to qualification of Patterson's 2012 conviction for preservation purposes, but acknowledges that *Unites States v. Lewis*, 58 F. 4th 764 (3d Cir. 2023) "appears to foreclose this argument." Doc. 138, p. 3. Patterson's distribution of controlled substances conviction is a qualifying predicate offense and is supported by *Lewis*.

For the reasons stated above, the Government believes Patterson's guideline range would be 33 to 41 months based on a total offense level of 13 and Criminal History Category of VI. Doc. 138 p. 2.

    B.    **Step Two - Departures.**

Neither party has requested a departure in this case.

    C.    **18 U.S.C. § 3553(a) Factors.**

The final step in the sentencing process is the balancing of the section 3553(a) factors. During this stage, the District Court is required

to not only balance these factors but to create a sufficient record for an appeals court to have confidence that it has considered these factors. *United States v. Tomko*, 562 F.3d 558, 567d (3d Cir. 2009). While the record does not have to address every possible argument, "a colorable argument about the applicability of one of the § 3553(a) factors" should be addressed. *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010).

### 1. Nature and Circumstances of The Offense

Fentanyl trafficking continues to plague our nation. In 2017 the opioid epidemic was declared a public health emergency by the United States Department of Health and Human Services.[2]  According to the U.S. Centers for Disease Control and Prevention (CDC), the drug overdose epidemic continues to worsen and remains a leading cause of injury related death.[3]  More than 1 million people have died since 1999 from a drug overdose.[4] In 2021, 75% of drug overdose deaths involved

---

[2] Megan L. Dolbin-MacNab and Lyn M. O'Connell, *Grandfamilies and the Opiod Epidemic: A Systemic Perspective and Future Priorities*, National Library of Medicine (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7829093/
[3] https://www.cdc.gov/drugoverdose/epidemic/index.html (last visited March 25, 2024).
[4] https://www.cdc.gov/opioids/data/index.html (last visited March 25, 2024).

6

an opioid, including prescription opioids, heroin and fentanyl.[5] Overdoses involving opioids killed more than 80,000 people in 2021 and nearly 88% of those deaths involved synthetic opioids like fentanyl.[6]

Provisional data shows that drug overdose deaths in the United States surpassed 100,000 in 2022.[7] Fentanyl was responsible for 73,654 of those deaths.[8] Fentanyl deaths have increased every year for the past decade.[9]

In April 2022, current DEA administrator Anne Milgram outlined the current fentanyl overdose threat and stated, "Fentanyl is killing Americans at an unprecedented rate. Already this year, numerous mass-overdose events have resulted in dozens of overdoses and deaths. Drug traffickers are driving addiction, and increasing their profits, by mixing fentanyl with other illicit drugs. Tragically, many overdose

---

[5] *Id.*
[6] *Id.*
[7] https://blogs.cdc.gov/nchs/2023/05/18/7365/#:~:text=The%2082%2C998%20predicted%20opioid-involved%20drug%20overdose%20deaths%20in,a%20decrease%20from%2080%2C997%20in%20the%20previous%20year (last visited March 25, 2024).
[8] https://usafacts.org/articles/are-fentanyl-overdose-deaths-rising-in-the-us/ (last visited March 25, 2024).
[9] *Id.*

victims have no idea they are ingesting deadly fentanyl, until it's too late."[10]

According to the Pennsylvania Attorney General's Office, the heroin and opioid epidemic is the number one public health and public safety challenge facing Pennsylvania.[11] Pennsylvania's overdose death rate is 71.9% higher than the national average overdose death rate.[12] Over 6% of nationwide overdose deaths occur in Pennsylvania.[13]  As this Court is well aware, the opioid epidemic continues to impact the Middle District of Pennsylvania.

In August 2023, the Pennsylvania Department of Health issued their findings regarding fatal and non-fatal overdoses in Pennsylvania

---

[10] https://www.dea.gov/press-releases/2022/04/06/dea-warns-increase-mass-overdose-events-involving-deadly-fentanyl (last visited March 25, 2024).
[11] https://www.attorneygeneral.gov/protect-yourself/opioid-battle/#:~:text=The%20heroin%20and%20opioid%20epidemic%20is%20the%20number,the%20death%20toll%20will%20only%20continue%20to%20rise (last visited March 25, 2024).
[12] https://drugabusestatistics.org/drug-overdose-deaths/#pennsylvania (last visited March 25, 2024).
[13] *Id.*

8

in 2021.[14] In 2021, 5,356 drug overdose deaths occurred in Pennsylvania and 85% were confirmed to be opioid related.[15]

Importantly, for every drug overdose that results in death, there are many more nonfatal overdoses.[16] People who have had at least one overdose are more likely to have another.[17] Between January 1, 2018, and July 15, 2023, Pennsylvania emergency service personnel administered 89,360 doses of Naloxone.[18] During that same time period, there were 52,570 emergency room visits for opioid overdoses.[19] Accordingly, there are scores of individuals living with addiction and committing crimes to support their habits. Crime increases when addicts deplete their savings and bargain away their possessions to support their habit.

---

[14] https://www.health.pa.gov/topics/Documents/Programs/PDMP/Pennsylvania%20Overdose%20Data%20Brief%202021.pdf (last visited March 25, 2024).
[15] *Id.*
[16] https://www.cdc.gov/drugoverdose/epidemic/index.html (last visited March 25, 2024).
[17] *Id.*
[18] https://data.pa.gov/stories/s/Pennsylvania-Opioids/9q45-nckt/ (last visited March 25, 2024).
[19] *Id.*

Interviews of drug users and treatment personnel indicate that users often experience multiple drug overdoses in the course of their drug use, and "widespread naloxone availability has resulted in many lives saved."[20] In addition to the overdoses, the economic and social costs to the community are overwhelming. Fentanyl, heroin, and other opioids tear apart families, and the community is left to support loved ones left behind. It has impacted families across all racial groups, geographic regions and socioeconomic classes.[21]

This Court should consider these statistics and the havoc that fentanyl and other controlled substances are wreaking in our community when it imposes its sentence in this case. By any definition, this is a very serious offense, and the sentence this Court imposes should reflect the seriousness of the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

### 2. History and Characteristics of The Defendant

The Defendant has an extensive criminal history. As detailed in the PSR, Patterson has been found guilty of numerous

---

[20] *Id.*
[21] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7829093/

offenses dating back to 2007. PSR ¶¶ 27-33. These offenses include robbery, possession with intent to deliver cocaine, unlawful possession of a firearm, escape, and others. *Id.* Patterson's history and characteristics further warrant a sentence within the recommended guideline range.

### 3. The Need for Deterrence and a Just Punishment

Given the prevalence of fentanyl-related tragedies and the danger trafficking these drugs poses to the Middle District of Pennsylvania and the country, there is a significant need for the deterrence of the defendant and others from engaging in the trafficking of narcotics. Regarding general deterrence, this sentence should also deter anyone looking to step into a role as a distributer during this time of rising trends in overdose and addiction rates. A guideline sentence is necessary in this case to prove to the defendant and other potential drug traffickers that this is a serious offense that is not be taken lightly.

## III. CONCLUSION

For the reasons identified above, the Government requests that the Court sentence the Defendant sentence within the guideline range.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | GERARD M. KARAM<br>United States Attorney |
| Dated: March 26, 2024 | /s/ Stephen W. Dukes<br>Stephen W. Dukes<br>Assistant United States Attorney<br>PA 323276<br>1501 N. 6th Street, Box 202<br>Harrisburg, PA 17102<br>Phone: (717) 221-4482<br>stephen.dukes@usdoj.gov |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. 1:21-CR-00119-1 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| JAMES PATTERSON, | : | |
| Defendant. | : | (Electronically Filed) |

CERTIFICATE OF SERVICE

I certify that on March 26, 2024, I served the Government's Sentencing Memorandum by electronic service on the following individual, addressed as follows:

Jason Asbell, Esquire – jasbell@gkh.com


/s/ Samantha Deibert
Samantha Deibert
Supervisory Legal Assistant

13